The document below is hereby signed.

Signed: July 18, 2013



S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| 3100 DUMBARTON DC, LLC, | ) | Case No. 10-00470 |
| | ) | (Chapter 11) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| BANK OF AMERICA, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 12-10041 |
| 3100 DUMBARTON DC, LLC, | ) | |
| | ) | **Not for Publication in** |
| Defendant. | ) | **West's Bankruptcy Reporter** |

<u>MEMORANDUM DECISION RE MOTION FOR SUMMARY JUDGMENT</u>

This adversary proceeding addresses the *Deed of Trust* of

December 27, 2006, against the debtor's real property and

improvements located at 3100 Dumbarton Street, NW, Washington

D.C. 20007 (the "Property").  The issue is whether that *Deed of*

*Trust* should be treated as effective against the Property.

The *Deed of Trust* was executed in favor of Wells Fargo Bank,

N.A., to secure a promissory note obligation of the debtor's

principal, Marc Teren.  In turn, Wells Fargo assigned the *Deed of*

*Trust* and the promissory note to Bank of America, N.A., the
plaintiff in this adversary proceeding.  Bank of America's
complaint against the debtor, 3100 Dumbarton DC, LLC
("Dumbarton"), seeks a declaration that pursuant to the *Deed of
Trust*,[1] Bank of America is the holder of a first priority lien on
the Property.  Bank of America has filed a motion for summary
judgment and I will grant the motion.

In summary, Bank of America contends that the *Deed of Trust*
securing the promissory note obligation is enforceable against
the Property because it was properly executed on behalf of
Dumbarton by Dumbarton's Managing Member, Marc Teren, in his
capacity as the Managing Member of Dumbarton.  Dumbarton, by
contrast, contends that Teren executed the *Deed of Trust* in his
capacity as an individual, and not as Managing Member of
Dumbarton, and as such, the *Deed of Trust* is not enforceable
against the Property.

No reasonable finder of fact could conclude that Dumbarton
did not intend to encumber its property through the *Deed of Trust*
executed by Teren.  Bank of America is entitled to a finding
either that the *Deed of Trust* is valid on its face or that the

---

[1]  The current interest being asserted by Bank of America
should not be confused with Bank of America's original
first-priority lien on the property, which it acquired in 2004
when it funded the debtor's purchase of the Property.  That
original loan was satisfied and the lien released when the
obligation was refinanced through the Wells Fargo transaction
that is the subject matter of this dispute.

*Deed of Trust* ought to be reformed to render it binding and
enforceable.  Because the *Deed of Trust* is either valid on its
face or subject to reformation to render it enforceable, it is
unnecessary to reach the question of whether equitable
subrogation applies.

I

Attached to Bank of America's motion is a thirty-two
paragraph statement of material facts as to which no genuine
dispute exists.  The defendant has not, in compliance with Local
District Court Local Civil Rule 7(h) filed a "separate concise
statement of genuine issues setting forth all material facts as
to which it is contended there exists a genuine issue necessary
to be litigated. . . ."  Accordingly, except as otherwise
expressly indicated in this decision, I have assumed that the
facts identified in the statement of material facts as to which
no genuine dispute exists are admitted by Dumbarton, and I
incorporate those facts by reference in this decision.  The
relevant material facts can be summarized as follows.

A.

The Bank of America Acquisition Loan and the Wachovia Loan

Dumbarton acquired the Property in 2004 utilizing a $2.5
million loan from Bank of America whose repayment was secured by
a deed of trust on the Property executed on behalf of Dumbarton
by Teren in his capacity as the manager and sole owner of Equity

3

Appreciation Partners, LLC.  Equity Appreciation Partners, LLC is
the sole and Managing Member of Dumbarton, the title holder of
the property.

On May 4, 2006, Dumbarton, through Teren as Dumbarton's
Managing Member, granted a second deed of trust on the Property
to Wachovia Bank, N.A. to secure a loan in the principal amount
of $1,005,000.[2]

B.

The Wells Fargo Refinance

The Bank of America and Wachovia loans were subsequently
refinanced through a loan extended by Wells Fargo to Teren.  When
Wells Fargo extended this loan, there is no genuine dispute that,
as known by Teren at the time, Wells Fargo expected and intended
to obtain a first priority lien on the Property in exchange for
its loan.  There is likewise no genuine dispute that the title
company, MG Title, intended and expected that Wells Fargo would
receive a valid and enforceable deed of trust against the
Property in exchange for the loan.  And finally, there is no
genuine dispute that in signing the *Deed of Trust* (as evidenced

---

[2] Dumbarton has not disputed the effectiveness of Teren's
executing deeds of trust and other instruments on behalf of
Dumbarton as "Managing Member" of Dumbarton.  Even though Equity
Appreciation Partners, LLC is the managing member of Dumbarton,
Teren is the managing member of Equity Appreciation and, as the
only flesh and blood individual involved in that chain of
ownership, is the only individual who could act on behalf of
Dumbarton.

by other documents, executed on the same date, and discussed in
subpart C, below), Dumbarton, through Teren, intended to grant to
Wells Fargo an enforceable security interest in the Property.[3]

On December 27, 2006, Teren in his individual capacity,
executed an Initial Interest Adjustable Rate Note (the "Note") in
the original principal amount of $3,060,000.00 payable to Wells
Fargo.  Also on December 27, 2006, to secure repayment of the
sums due under the Note, Teren executed the *Deed of Trust* in
favor of Wells Fargo.  The *Deed of Trust* was recorded among the
land records of the District of Columbia on January 9, 2007.

The typewritten text of the first page of the recorded *Deed
of Trust* indicates that the "'Borrower' is MARC TEREN, A SINGLE
PERSON." [Exh. J.]   Handwritten beneath that are the words
"Managing Member, 3100 Dumbarton DC, LLC."  Similarly, on page 15
of the *Deed of Trust*, the typewritten portion of the notary
clause identifies the signatory of the *Deed of Trust* simply as
"MARC TEREN," but a handwritten notation beneath that adds the
words "Managing Member of 3100 Dumbarton DC, LLC."

The *Deed of Trust* was prepared in a non-final typewritten
form by the lender, Wells Fargo.  Upon review of that typewritten

---

[3] I am giving Teren and Dumbarton the benefit of the doubt
in this regard.  If Dumbarton wants to argue to the contrary --
that Teren did not, in signing the *Deed of Trust*, intend to
create a binding and enforceable security interest in the
Property--such conduct would necessarily be deceitful and
inequitable.

version of the *Deed of Trust*, the settlement attorney, Thomas H. Gimer, noticed that the document failed to specify that Teren was acting on behalf of Dumbarton, who was the title owner of the Property and the only entity capable of encumbering the property under a deed of trust.  Accordingly, Gimer added a handwritten notation to the signature block clarifying that Teren was acting in his capacity as Managing Member of 3100 Dumbarton.  He did so because he understood that it was necessary for the *Deed of Trust* to be executed by the owner of the property that was to be encumbered, in this case, 3100 Dumbarton DC, LLC, in order for the loan to be secured by the property.

Although there is no genuine dispute that the handwritten notes were added to the *Deed of Trust* by Gimer, there is a genuine dispute as to whether Gimer did so at the time of settlement or afterwards, in Teren's presence or absence, and, if Teren was not present, whether Teren received notice that the notations were being added.  The notation was, in any event, added to the *Deed of Trust* before it was recorded with the recorder of deeds, such that the world was on notice that Dumbarton had granted Wells Fargo a first-priority lien on the

Property.[4]

## C.

Additional Documents Executed Incident to the Wells Fargo Loan

On December 27, 2006, Teren executed a Limited Liability Company Rider (the "LLC Rider").  The LLC Rider specifies that it is "Incorporated Into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed ( the 'Security Instrument') of the same date given by the undersigned (the 'Borrower') to secure Borrower's Note to Marc Teren and Wells Fargo Bank, NA (the 'Lender') of the same date and covering the Property described in the Security Instrument and located at: 3100 DUMBARTON ST NW, WASHINGTON, DC 200077 [sic]."   [Exh. L.] The document specifies that the "undersigned" is the Borrower, and the typewritten signature block indicates that the LLC Rider is being signed on behalf of 3100 Dumbarton DC, LLC, by Marc

---

[4]  If this matter were to go to trial, it would be Dumbarton's burden to prove that the deed means anything other than what it purports to mean on its face.  *See Smart v. Nevins*, 298 A.2d 217, 219 (D.C. 1972) ("Parol evidence is admissible to show what the actual intent of the parties was at the time of executing a written instrument, including a deed. However (the) presumption is that a deed is what it purports to be on its face, and one who seeks to establish the contrary has the burden of doing so by clear and convincing evidence." (internal citations and quotations omitted)).  On its face, the *Deed of Trust* filed with the recorder of deeds indicates that it was executed by Teren in his capacity as Managing Member of Dumbarton.  Because I conclude that Bank of America is entitled to reformation of the *Deed of Trust* to include the handwritten notation regardless of when the language was added and regardless of whether Teren approved it, it is unnecessary to resolve when the language was added and whether Teren approved it.

Teren, Managing Member.  Teren admits that when he signed the LLC
Rider he intended to bind Dumbarton, and he concedes that it does
bind the LLC. [Exh. B, pp 92-93.] There are no handwritten
notations modifying the text of the signature block on this
document.

Teren also admits that he signed the December 27, 2006
Security Affidavit in his capacity as Dumbarton's Managing
Member. [Exh. M.] That Security Affidavit, recorded with the *Deed
of Trust*, describes Dumbarton as "the owner of the real property
described within" and certifies "that the real property described
within is either Class 1 Property or Class 2 Property ([under]
D.C. Code 47-813), with 5 or fewer units."

On December 27, 2006, Teren also executed, on behalf of 3100
Dumbarton DC, LLC and in his capacity as Managing Member of
Dumbarton, a subordination agreement.  Under the agreement,
Wachovia agreed to subordinate its lien position to Wells Fargo
in light of the *Deed of Trust* granted by 3100 Dumbarton DC, LLC
to secure Wells Fargo's loan to Teren.[5]  The document could not
be more clear, and Teren admits, consistent with the document

---

[5]  When describing the Wells Fargo deed of trust to which
Wachovia is subordinating, the subordination agreement states
"Whereas the Grantor did grant and convey the Property to,
Trustee, in trust, to secure a Note payable to Wells Fargo Bank,
N.A., in the original principal sum not to exceed Three Million
Sixty Thousand And 00/(3,060,000.00). Bearing the date of ___,
said Deed of Trust (The "New Deed of Trust") being recorded
immediately prior hereto among the aforesaid land records)."

8

itself, that Teren executed the subordination agreement in his capacity as Managing Member of Dumbarton.  There is no genuine dispute that the "New Deed of Trust" referred to in the subordination agreement is the *Deed of Trust* executed incident to the Wells Fargo loan to Teren, and there is no genuine dispute that Dumbarton, in that agreement, represents that it had, immediately prior to executing the Subordination Agreement, executed a deed of trust encumbering the Property in favor of Wells Fargo to secure the loan in question.

Finally, on December 27, 2006, Teren executed the HUD-1 Settlement Statement for the transaction which identifies the borrower as "3100 Dumbarton DC, LLC."  The HUD-1 Settlement Statement reflects that from the disbursements at settlement, the then-first mortgage lender, "Bank of America, N.A.," was paid off in the amount of $4,047,765.08, and that Wachovia Bank, N.A. was paid $188,177.58.[6]

---

[6]   I need not rely on another document executed by Teren on December 27, 2006, namely, the Initial Interest Adjustable Rate Rider. [Exh. K.] The document specifies that the Rider is "incorporated into and shall be deemed to amend and supplement the [Deed of Trust] . . . ."  Similar to the *Deed of Trust*, the typewritten portion of the signature block identifies the borrower merely as "MARC TEREN," and a handwritten notation beneath the name elaborates with "Managing Member, 3100 Dumbarton DC, LLC."  There is no genuine dispute that the handwritten notation was added by Gimer.  Because it is unclear whether that handwriting was on the document when Teren executed it, the document only shows that Gimer acted in accordance with Dumbarton's intention evidenced on the other documents, namely, its intention to encumber the Property.

Teren admits that, on the day of settlement, he understood
that Wells Fargo intended to hold a valid first priority lien on
the Property to secure its loan.  Wells Fargo assigned its
interest in the *Deed of Trust* to Bank of America by Assignment of
Deed of Trust on July 22, 2010.

II

A party is entitled to summary judgment when there is no
"genuine issue of material fact" and the undisputed facts warrant
judgment for the moving party as a matter of law.  Fed. R. Civ.
P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).
When deciding a motion for summary judgment, the court must view
the evidence in the light most favorable to the party against
whom summary judgment is sought and must draw all reasonable
inferences in his favor.  *See Matsushita Elec. Indus. Co. Ltd. v.
Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The moving party
has the initial burden of demonstrating the absence of a disputed
issue of material fact.  *Celotex v. Catrett,* 477 U.S. 317, 323
(1986).  Once such a showing has been made, the non-moving party
must either (1) cite to particular materials in the record
showing that a fact is genuinely disputed, or (2) "show[ ] that
the materials cited do not establish the absence . . . of a
genuine dispute, or that an adverse party cannot produce
admissible evidence to support the fact."  Fed. R. Civ. P.
56(c)(1).  The party opposing summary judgment "may not rely on

10

conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). Moreover, not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson*, 477 U.S. at 248.

### A.

"Reformation is available where there is an error in reducing the agreement of the parties to a writing." *In re Estate of Munawar*, 981 A.2d 584, 586 (D.C. 2009). The parties' intent for purposes of reformation is measured as of the time the document is executed. *Id.* at 588 n.2. "The party seeking reformation only has to show that the parties agreed to accomplish a certain objective and that the instrument is insufficient to execute their intention." *Wilhelm v. Beyersdorf*, 999 P.2d 54, 59 (Wash. Ct. App. 2000). No reasonable finder of fact could conclude that at the time the *Deed of Trust* was executed, Dumbarton intended anything other than to have the *Deed of Trust* executed on its behalf such that it would encumber Dumbarton's property, that Teren intended to execute the *Deed of Trust* in whatever capacity rendered it valid and enforceable against Dumbarton, and that Wells Fargo intended that the *Deed of Trust* would be executed by Teren in whatever capacity necessary

11

to render it binding and enforceable against Dumbarton.

Cases involving lien validity and priority often require the court to resolve complicated contract disputes or decide difficult questions of intent.  This is not one of those cases.  Here, if Teren intended to sign in his capacity as Managing Member of Dumbarton, it does not matter if the signature block of the *Deed of Trust* accurately specified what capacity he was acting in, because intent controls.  *See Vakas v. Manuel*, 316 F.2d 369, 370 (D.C. Cir. 1963) (reformation is available to "make a mistaken writing conform to antecedent expressions on which the parties agreed.")

Similarly, if Teren was operating under the mistaken belief that he had the power to encumber the property in his individual capacity,[7] and thus "intended" to sign in his individual capacity to create an enforceable security interest, Bank of America is entitled to reformation based upon mutual mistake to reflect the

---

[7]    In that case, Teren's mistaken belief with respect to his ability to encumber the property ought to be imputed to Dumbarton given Teren's position as Managing Member of Dumbarton, and the uncontradicted evidence, in the form of documents executed that same day relating to this transaction, that Dumbarton fully intended that the Property be encumbered by the *Deed of Trust*. *See Peterson v. First State Bank*, 737 N.E.2d 1226, 1229 (Ind. Ct. App. 2000) ("Writings executed at the same time and relating to the same transaction or subject matter will ordinarily be construed together in determining the intention of the parties.") (reformation successfully sought to reform a clerical error in the typing of the signature lines).

12

agreement of the parties.[8]  *Shearer v. Pringle*, 233 N.W. 623,
624-35 (Wis. 1930) (reformation appropriate to reflect mutual
intention that administratrix not be personally liable on note
even though language in the body of the contract would, without
reformation, have that result).  Finally, if Teren intended to
sign the *Deed of Trust* in his individual capacity,[9] knowing full-
well that he lacked the ability to encumber the property, Bank of
America is also entitled to reformation of the *Deed of Trust*

---

[8]  The mutuality of the mistake is found in the fact that
Teren, Dumbarton, and Wells Fargo were all operating under the
same mistaken belief that Teren was acting in whatever capacity
necessary to make the *Deed of Trust* binding on Dumbarton.

[9]  Dumbarton's opposition to the motion for summary judgment
focuses on Teren's intent to assume personal liability under the
note, yet what the motion seeks is a declaration with respect to
the validity and priority of the lien.  The question before the
court is thus not whether Teren is personally liable on the debt
depending on whether he signed the note in his individual or in
his corporate representative capacity, but rather, is whether the
*Deed of Trust* is valid and enforceable against Dumbarton.
Because individuals and corporations are *both* capable of
obligating themselves under a note, liability disputes where the
court is asked to determine if a signatory to a note obligated
himself personally, or acted only in his representative capacity,
are not uncommon. *See Akers v. Sinclair*, 226 P.2d 225 (Wash.
1951) (dispute as to whether corporate representative was
personally liable on note he intended to sign only in his
representative capacity).   In those cases, the court is
presented with two competing, yet equally plausible, liability
scenarios.  The facts here are easily distinguishable.  Only
Dumbarton could encumber the Property through a deed of trust;
there is no theory under which the *Deed of Trust* takes on an
alternate yet valid meaning in the event Teren is found to have
acted in his individual capacity.  Either the *Deed of Trust* is a
valid enforceable instrument executed by Dumbarton, through its
Managing Member, or the Deed of Trust has no meaning and is a
legal nullity.

based upon Teren's inequitable conduct.

When viewing the evidence in the light most favorable to
Dumbarton, no reasonable finder of fact could conclude that
Teren, in executing the *Deed of Trust*, intended anything other
than to act in his capacity as Managing Member of Dumbarton to
grant to Wells Fargo an enforceable lien on the Property.  Thus,
to the extent Dumbarton argues that the *Deed of Trust* is
defective on its face by virtue of certain language having been
added only after Teren signed and without his consent or
permission, Bank of America remains entitled to reformation of
the *Deed of Trust* based on the theory either of scrivener's error
or mutual mistake.[10]  *See Hallas v. Ameriquest Mortg. Co.*, 2005
WL 2044523 (D. Or. Aug. 24, 2005) (the fact that the land's
description was missing from the deed of trust at the time of
signing does not negate the undisputed mutual intention of the
parties).

---

[10]  Mistake need not be mutual to justify reformation if
"[a] mistake by one party [is] accompanied by fraud or
inequitable conduct on the part of the other . . . ." *Hawkins v.
Fradkin*, 178 F.2d 705, 708 (D.C. Cir. 1949).  If Dumbarton could
successfully show that Teren intended to sign the *Deed of Trust*
in his individual capacity so as to render the *Deed of Trust*
unenforceable against Dumbarton, given Teren's admission that he
knew Wells Fargo expected at the time of settlement to receive an
enforceable security interest in the Property as a condition to
the loan, and given that Dumbarton, acting through Teren,
facilitated such deceit by outwardly representing to Wells Fargo
that it intended for the *Deed of Trust* to be valid as against
Dumbarton (through the execution of related documents confirming
the existence and validity of the *Deed of Trust* encumbering the
Property), Bank of America would be entitled to reformation.

14

The only defect Dumbarton alleges with respect to the *Deed of Trust* is that the "Managing Member" language used to describe the borrower, and to clarify the capacity in which Teren was signing the *Deed of Trust*, was not present on the instrument at the time of signing.  Regardless of when the notation "Managing Member" was added to the *Deed of Trust* and its signature block, the documents executed immediately following the signing of the *Deed of Trust* leave no room for doubt with regard to Dumbarton's and Teren's intention in executing the *Deed of Trust*.  Teren and, by extension, Dumbarton, understood that the *Deed of Trust*, executed on Dumbarton's behalf by its Managing Member, was intended to grant Wells Fargo a first-priority lien.  Wachovia agreed to subordinate its lien to the Bank of America lien, which all parties understood would be secured by a first-priority deed of trust.  The *Deed of Trust* was necessary to secure the substantial loan that was extended, and was an integral part of the transaction.  Even if Teren contends that the notation in the signature block describing his capacity was not authorized or approved by him, Bank of America is entitled to reformation of the *Deed of Trust*.

### B.

I do not decide the question of whether Bank of America is entitled to equitable subrogation.  If I had concluded that the *Deed of Trust* was unenforceable and not subject to reformation,

15

however, the facts strongly suggest that Bank of America, as

Wells Fargo's successor in interest, would be entitled to

equitable subrogation.  This is a classic case of a refinancing

lender who, operating at arms length and not as a volunteer,

reasonably believes it is receiving a first-priority lien in

exchange for a loan, with the proceeds of the loan being used to

satisfy a pre-existing obligation secured by a first-priority

lien.  *See In re Stevenson*, 2008 WL 748927 (Bankr. D.D.C. 2008).

Because the *Deed of Trust* is either enforceable on its face, or

subject to reformation to render it enforceable, it is

unnecessary to decide whether equitable subrogation applies.

III

For all of these reasons, I will grant summary judgment in

favor of Bank of America.  A judgment follows.

[Signed and dated above.]

Copies to: All counsel of record; Office of United States
Trustee.